NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                               SUPERIOR COURT DIVISION    21 cvs 6923

GUILFORD COUNTY

PETER UDO,

       Plaintiff,

vs.                                                   COMPLAINT

NORTH CAROLINA AGRICULTURAL and
TECHNICAL STATE UNIVERSITY,

       Defendant.

COMES NOW PLAINTIFF, complaining of the acts of Defendant, alleges and says that:

1. Plaintiff is a resident of North Carolina.

2. Upon information and belief, Defendant is a university organized and existing under and by virtue of the laws of the State of North Carolina, with a place of business in Guilford County, North Carolina. Defendant is an employer in commerce within the State of North Carolina as it charges fees for its services and events.

## FIRST CAUSE OF ACTION: NATIONAL ORIGIN AND GENDER DISCRIMINATION

3. That, Plaintiff, a person born in Nigeria, was employed by Defendant as a technology support manager until August, 2020.

4. That after Plaintiff was hired, he worked very diligently and learned the specific operations of Defendant's organization to the best of his ability. Throughout his employment with Defendant, he performed his positions diligently and with the best interests of the Defendant in mind. Upon information and belief, Plaintiff was performing his duties at or above the level of other employees with the same experience and tenure with Defendant.

5. That he was assigned to service the worst rooms in the department, including one with a leaky roof. His supervisor, Danielle Winchester, also re-assigned a Nigerian professor, Dr. Ugboro, to this same room to teach his classes when he had originally been placed in a room in better physical condition. That Winchester frequently made derogatory comments to coworkers regarding persons of African birth.

6. That upon information and belief, Winchester also removed Dr. Ugboro from a necessary email list. When Plaintiff reconnected him to the list due to its essential nature for him, Winchester removed some of Plaintiff's duties.

7. That Plaintiff reported his concerns about the hostile working environment and national origin and gender discrimination on several occasions. These concerns were formally reported on or about January, 2020 to Margo McDougald in Human Resources when discussions with his supervisor, Danielle Winchester, failed to achieve any improvements in her behavior. Plaintiff continued to report special, more favorable treatment provided to employees of American birth as compared to himself with respect to job assignments and training. His concerns included undermining his professional reputation with colleagues by creating skewed surveys of his performance beyond those normally utilized by Defendant, and assigning duties to him that should have been Winchester's duties.

8. That Plaintiff was the only person of Nigerian birth employed in his department and reporting to Danielle Winchester. In addition, Plaintiff was the only male employee in his department reporting to her as well.

9. That Plaintiff began to experience retaliation for reporting his concerns of discrimination and hostile work environment to Human Resources. The retaliation was in the form of withholding resources necessary to performance of his duties, such as administrator level access, taking some of his duties and giving them to a female coworker of American birth, and refusal to communicate work requirements with him in a timely fashion.

10. That Plaintiff attempted to resolve the issues through the internal grievance process without success. Further retaliation followed in his annual performance evaluation conducted by Danielle Winchester in the assessment and scoring of his performance.

11. That on or about August 14, 2020, Plaintiff's employment with Defendant was discontinued by Kevin James without justification as he was performing the position within the standards and expectations of the industry and the Defendant.

12. That upon information and belief, he was subjected to a higher level of scrutiny than his coworkers in the department who were not of Nigerian birth and who were female.

13. That, upon information and belief, a person with less experience and of a different original nationality and gender than Plaintiff has assumed his duties.

14. At all times relevant herein, Plaintiff's managers Danielle Winchester and Kevin James that criticized his performance, denied him continued employment opportunities, and terminated his employment, were agents of the Defendant, duly authorized and acting within the scope of their employment. Moreover, upon information and belief, they were all of American national origin.

15. That Plaintiff expressed his concerns about national origin discrimination, gender discrimination, and retaliation in the workplace as well as his objection to the alleged basis for his termination to said managers. Plaintiff left Defendant's employ without a response to his concerns about the discriminatory conduct.

16. The conduct of Defendant, as alleged herein, not only violates Title VII of the Civil Rights Act of 1964, as amended, but also violates the public policy of the State of North Carolina and North Carolina General Statutes Section 143-422.1 et seq.

17. That within 180 days of the last discriminatory actions of Defendant, Plaintiff filed a charge in writing with the Equal Employment Opportunity Commission (hereinafter "EEOC") charging Defendant with retaliation, gender discrimination, and national origin discrimination in its discriminatory behavior, creation of a hostile working environment, in its decision to terminate his employment. More than 180 days have elapsed since Plaintiff filed these charges with the EEOC. On or about April 30, 2021, Plaintiff was issued a Right to Sue Letter on said charge of discrimination from the local office of the EEOC. At this time, Plaintiff has decided to institute a private lawsuit, and is filing same within ninety (90) days of receipt of the EEOC's Right to Sue Letter.

18. Said retaliation and national origin discrimination, creation of a hostile environment, and subsequent termination of Plaintiff's employment by Defendant, by and through its duly authorized agents is the direct and proximate cause of injury to Plaintiff in an amount in excess of $25,000.00 representing lost wages and benefits, and emotional distress.

## SECOND CAUSE OF ACTION: DISABILITY DISCRIMINATION

19. The allegations set forth in paragraphs one through eighteen are realleged and incorporated by reference as if fully set forth.

20. Plaintiff was diagnosed with a chronic disorder to his back that required periodic treatment and minor accommodation of his work duties and working schedule. Plaintiff requested a variable height adjustable desk from Winchester and the request was denied. A second request escalated up the chain of command was never answered. The Defendant failed to properly accommodate his condition. Due to the perception by his management team that he was disabled, Plaintiff was disciplined, denied reasonable accommodation, and his employment discontinued.

21. As a result of the chronic condition, Plaintiff suffers from a disability within the meaning of the Americans with Disabilities Act pursuant to 42 U.S.C. §12102 in that he has an impairment that substantially limits one or more of the major life activities, he has a record of such an impairment, and/or he is regarded as having such an impairment by managers of the Defendant. Plaintiff's work life is affected as well as his personal life by the effects of his medical condition as the condition affects his ability to sleep well, lift heavy weights, and sit for long periods of time.

22. That, for all times relevant herein, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. §12111 and was otherwise qualified to perform the essential job functions with reasonable accommodation by Defendant.

23. That Plaintiff did not request any significant modification of his job functions (only the variable height desk) yet, upon information and belief, he was perceived to require excessive accommodation and was perceived to be a disability liability to the Defendant.

24. At all times relevant herein, Defendant has been aware of the provisions of the ADA which prohibits discrimination in employment on the basis of disability.

25. That the effect of Defendant's policies and practices as described above has been to deprive Plaintiff of equal employment opportunities and is a direct violation of the ADA in the following ways:

    a. by discriminating against Plaintiff with respect to the terms, conditions, and privileges of employment because of Plaintiff's disability which is unrelated to Plaintiff's ability to perform the essential duties of his position;

    b. by discontinuing Plaintiff's employment;

    c. by filling the position with someone outside of the protected class;

    d. by denying reasonable accommodation of his work environment; and

    e. such other ways as may be proven at trial.

26. That the conduct of Defendant, as alleged herein, not only violates the ADA, as amended, but also violates the public policy of the State of North Carolina.

27. That within 180 days of the last discriminatory actions of Defendant, Plaintiff filed a charge in writing with the Equal Employment Opportunity Commission (hereinafter "EEOC") charging Defendant with disability discrimination and failure to accommodate his disability, and retaliation. Upon completion of its investigation, the EEOC issued a Right to Sue Letter on said charges of discrimination. At this time, Plaintiff has decided to institute a private lawsuit, and is filing same within ninety (90) days of receipt of the EEOC's Right to Sue Letter.

28. That said retaliation, discontinuance of employment, and disability discrimination of Plaintiff by Defendant, by and through its duly authorized agents is the direct and proximate cause of injury to Plaintiff in an amount in excess of $25,000.00 representing lost wages and benefits, as well as emotional distress. In light of Defendant's wilful, knowing and intentional discrimination against Plaintiff, he seeks an award of liquidated damages equal to double the amounts of back pay found owing.

4

Case 1:21-cv-00676-CCE-JEP   Document 5   Filed 09/01/21   Page 4 of 6

## THIRD CAUSE OF ACTION: AGE DISCRIMINATION

29. The allegations set forth in paragraphs one through twenty-eight are realleged and incorporated by reference as if fully set forth.

30. That Plaintiff was at all times relevant herein over the age of 40.

31. That, upon information and belief, at all times relevant herein, Defendant employed at least 20 individuals during the 52 weeks preceding these events and thus was an employer within the meaning of 29 U.S.C. §621 et seq., the Age Discrimination in Employment Act (hereinafter "ADEA").

32. That during his employment, Plaintiff was subjected to heightened scrutiny and unreasonable expectations compared to younger coworkers. Moreover, Plaintiff was denied the same level of communication with his supervisor, Danielle Winchester, experienced by his coworkers who were outside the protected age group.

33. That at all times relevant herein, Defendant has been aware of the provisions of N.C.G.S. §143-422.2 and the ADEA which prohibit employment discrimination on the basis of age. In the excessive scrutiny of his performance, decreased communication, and in discontinuing the Plaintiff's employment, Defendant wilfully, knowingly, and intentionally discriminated against him on the basis of his age.

34. That within 180 days of the last discriminatory actions of Defendant, Plaintiff filed a charge in writing with the Equal Employment Opportunity Commission (hereinafter "EEOC")charging Defendant with age discrimination. More than 180 days have elapsed since Plaintiff filed these charges with the EEOC. Plaintiff was issued his Right to Sue Letter on said charges of discrimination from the local office of the EEOC. At this time, Plaintiff has decided to institute a private lawsuit and is filing same within ninety (90) days of receipt of the EEOC's Right to Sue Letter.

35. That Defendant's actions against Plaintiff were unfair, made in bad faith, and in violation of the public policy of the State of North Carolina as they were based on age.

36. That as a proximate result of Defendant's conduct as stated above, Plaintiff has sustained and continues to sustain substantial losses in earnings, retirement benefits and other employment benefits, all to his damage in a sum in excess of $25,000. Plaintiff prays leave of the Court to amend this Complaint when these damages are more fully known.

WHEREFORE, Plaintiff prays the Court as follows:

1. That the Court enter a preliminary and then permanent injunction enjoining Defendant, its officers, employees, agents and all persons acting in concert with Defendant, from engaging

in employment discrimination on the basis of national origin, gender, age, and disability. Further directing Defendant to reinstate Plaintiff to the employment from which he was terminated, and to restore to him all wages, retirement benefits and other employment benefits due from his date of termination.

2. That the Court enter a money judgment against Defendant, awarding Plaintiff damages representing lost wages and all other sums of money, including retirement benefits and other employment benefits which Plaintiff would have earned had he not been terminated, as well as liquidated damages, together with interest on said amounts from Plaintiff's date of termination.

3. That he recover judgment against Defendant in an amount in excess of $25,000.00, plus interest, for emotional distress damages;

4. That he recover the costs of this action, including reasonable attorney's fees; and

5. For such other and further relief as to the Court may seem just and proper.

Nancy P. Quinn,
Attorney for Plaintiff
315 Spring Garden St., Suite 1D
Greensboro, NC 27401
Telephone: (336) 272-9072

6